IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| KANDACE BEAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:06-cv-1692-TMP |
| | ) |
| DON GASKIN, LYNN GASKIN, | ) |
| and GASKIN'S BACK ALLEY MOTORS, | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION</u>**

This matter is before the court on the motion for summary judgment filed by plaintiff Kandace Beam on July 9, 2007. The defendants, now proceeding *pro se*,[1] have not filed any argument or evidence in response, notwithstanding being advised of the purpose and consequences of summary judgment. (*See* Doc. 27). The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court enters this memorandum opinion. Having reviewed the arguments, evidence, and pleadings in this matter, the undersigned finds that the motion is due to be granted.

---

[1] At the time the motion for summary judgment was filed, the defendants were represented by counsel, who were allowed to withdraw thereafter on September 25, 2007. After counsel withdrew, the court extended additional time to the defendants to respond to the motion for summary judgment, but they have not done so.

**PROCEDURAL HISTORY**

The plaintiff, Kandace Beam, filed the complaint commencing this action on August 28, 2006. The dispute arises from plaintiff's purchase of a car from defendants, made pursuant to a consumer credit contract with Gaskin's Back Alley Motors.[2] The complaint asserts that the defendants violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA"), and Regulation Z, § 223.17(a) and (b) and 223.18, by failing to disclose to plaintiff the amount of the finance charge, the annual percentage rate, the amount financed, and other required matters. Plaintiff further asserts that the transaction at issue violated the Alabama Mini-Code, set forth at Alabama Code § 5-19-1 *et seq*., in that the amount of interest charged exceeded the statutory maximum. Defendants filed an answer to the complaint, through counsel. After the plaintiff filed the instant motion, defendants' counsel sought to withdraw. The court notified the defendants that they could make objections to the motion to withdraw, but none were filed. The motions to withdraw were granted, and the defendants were notified of the provisions of Rule 56. Defendants further were given additional time in which to respond to the pending motion for summary judgment. To date, defendants have not filed any response.

---

[2] Although named as a defendant, it appears that Gaskin's Back Alley Motors was simply a trade name used by the individual defendants and is not a separate legal entity. There is no indication that Gaskin's Back Alley Motors was ever served, and the answer filed through counsel by the individual defendants indicates that the individuals were doing business as Gaskin's Back Alley Motors. Accordingly, the court treats this action as involving only two defendants, Don Gaskin and Lynn Gaskin. Furthermore, the court notes that the bill of sale was signed by Don Gaskin and the promissory note given by plaintiff shows Don Gaskin as the creditor. Nonetheless, both Gaskins have admitted to being "creditors" within the meaning of TILA and the Alabama Mini-Code, and this is consistent with the existence of a partnership between the Gaskins.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient

3

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts

are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**FACTS**

The facts, viewed in the light most favorable to the non-movants, in this case the defendants, are as follows:

Kandace Beam, along with her sister, Melissa White, purchased a 1995 Kia Sportage automobile on November 8, 2005, from Gaskin's Back Alley Motors ("GBAM") in Gadsden, Alabama.  GBAM was operated by Don Gaskin and Lynn Gaskin, apparently as a sole proprietorship or partnership, for it does not appear that GBAM is separately incorporated.  Beam bought the car for a purchase price of $1,500.  According to the sales contract, the cash price owed was $1,548.75.[3]  Beam paid $777.00 as a down payment, and financed the balance of $771.75.[4]  The sales contract

---

[3] The complaint alleges in Count I that the total price of the car, with taxes, was $1,598.75, but the bill of sale indicates the total was $1,548.75, and that lower amount is consistent with the charges alleged in Count II of the Complaint.  The higher amount, $1,598.75, is set forth in the request for admissions and has been deemed admitted by the court, but, because all of the evidence otherwise before the court indicates that the correct amount was $1,548.75, the court accepts that amount as accurate.

[4] The Request for Admissions state that the amount financed was $821.75, but that total apparently was derived from subtracting the down payment of $777, from the sales price of $1,598.75, which apparently should have been $1,548.75.  It appears the correct amount of undisclosed finance charge is the total of the payments agreed to be paid by plaintiff ($64 X 60 weeks) $3,840, less the remaining balance on the purchase price of the car ($771.75), for an undisclosed finance charge of $3,068.25.

or promissory note called for the buyers to pay 64 *weekly* installments of $60. Thus, calculated on the basis of the weekly payments called for by the sales contract, the total cost of the $1500, 10-year-old Kia was $4,617. Beam made 29 of the weekly payments, for a total of $1,740, until May 18, 2006, when the Kia was totally destroyed in a wreck. Therefore, by the time the Kia was wrecked, Beam had paid the defendants $2,511.75. After the wreck, the defendants received an additional $2,216.10 from Beam's insurance company, because the defendants were listed as the loss payee on her auto insurance.[5] In total, the defendants had received, by June 2006, $4,727.85 for the car they sold at $1,500 about seven months before.

      The defendants have admitted that they are joint owners of the unincorporated GBAM, that they are creditors under the definition as set forth in the Truth-In-Lending Act ("TILA"), and that they regularly extended consumer credit in connection with the sale of used automobiles. The defendants further have admitted that they failed to disclose the cost of the credit extended to plaintiff, and that they failed to disclose the finance charge, annual percentage rate, or amount financed. They have admitted that they charged the plaintiff a finance charge in the amount of $3,018.75, which is in excess of the maximum allowable limits set by Alabama Code § 5-19-3(a).

---

     [5]    Beam has testified that she received a refund from her insurer of the $2,126.10 that was "wrongfully paid" to GBAM.

## DISCUSSION

**A.  TILA**

The plaintiff asserts that the transaction at issue is a consumer credit transaction subject to the provisions of the federal Truth-In-Lending Act.  There appears to be no dispute that Beam is a consumer, that GBAM and the Gaskins are a creditor, or that the Kia purchase was a credit transaction covered by the provisions of TILA.  Accordingly, the transaction is subject to the disclosure requirements of TILA, set forth in 15 U.S.C. § 1638 and Regulation Z at 12 C.F.R. § 226.17.  While the lengthy disclosure requirements will not be set out in detail here, it is clear that TILA mandates, *inter alia*, that a creditor disclose the "amount financed," the "finance charge," the "annual percentage rate," the "total of payments," and the "total sale price."  See 15 U.S.C. § 1638(a)(1) - (8).  Failure to comply with TILA's disclosure requirements subjects the creditor to liability for "any actual damages sustained ... as a result of the failure [to disclose]" **and** a civil penalty of "twice the amount of any finance charge" up to a cap of $1,000.  See 15 U.S.C. § 1640 (a)(1) and (2)(A)(i).  Plaintiff seeks judgment in the amount of $3,018.25 — her actual damages incurred in the form of finance charges[6] that were not disclosed — plus the $1,000.00 statutory cap, because her finance charges exceeded $500.  Based on the evidence submitted by the plaintiff in her motion for summary judgment, the plaintiff's motion on the TILA claim is due to be granted, and plaintiff is entitled to relief in the amount of $4,018.25.  Plaintiff also is entitled to an award of attorneys fees and expenses.

---

[6]  As noted above at footnote 4, it appears that the actual amount of undisclosed finance charge was $3,068.25.  Because the plaintiff only asks for $3,018.25, that is the amount of the court will use for calculation of the judgment.

The court also determines that the **amount** of damages plaintiff may recover on this claim is readily calculable and defined by the statute, and the judgment for damages can be entered on summary judgment. The facts related to the amount of damages plaintiff may recover under TILA are undisputed, and the elements of damage she may recover are strictly defined by the statute. As indicated above, the amount of her damages are the amount of undisclosed financed charges she actually paid, plus the $1,000 statutory penalty. Accordingly, judgment can be entered for plaintiff on this claim without the necessity of a trial as there are no disputed facts related to the amount to be entered.

### B. Alabama Mini-Code

Plaintiff also seeks summary adjudication of her claim that the defendants are subject to liability for violating Alabama Code § 5-19-1 *et seq*., also known as the Alabama Mini-Code. The Alabama Mini-Code defines a creditor as:

> (3) CREDITOR.  A person who regularly extends or arranges for the extension of credit for which the payment of a finance charge is required, whether in connection with loans, sales or property or services, or otherwise.  The provisions of this chapter apply to any such creditor irrespective of the creditor's status as a natural person or any type of organization.  A person is a creditor only if the person extended or arranged for the extension of credit more than 25 times in the preceding calendar year or more than five times in the preceding calendar year for credit transactions secured by a residential structure that contains one to four units.

Ala. Code § 5-19-1(3). Accordingly, only a person (whether natural or not) who regularly extends credit, and who did so more than 25 times in the preceding calendar year, is subject to the statutory provisions.

In this case, the Requests for Admissions establish that the defendants "regularly extended consumer credit," and that the defendants are creditors within the meaning of the term as set forth in TILA at § 1602(f). However, there is no evidence as to whether any defendant extended credit "more than 25 times" in the year preceding the year in which the plaintiff purchased her car. There is simply no evidence at all as to how many financed sales any defendant made at any time, and the court has insufficient evidence to determine whether the provisions of the Alabama Mini-Code apply to the transaction at issue. Accordingly, the motion for summary judgment as to the state-law claim is due to be denied.

## **CONCLUSION**

Accordingly, consistent with the foregoing discussion of the evidence presented and the law governing this action, this court determines that plaintiff's motion for summary judgment against defendants on the TILA claim, Count I of the Complaint, is due to be granted, and judgment is due to be entered on that claim in the amount of $4,018.75. The motion as to the claim based on the Alabama Mini-Code, Count II of the Complaint, is due to be denied. Because it is not clear whether the damages plaintiff might recover under the Alabama Mini-Code claim are greater or lesser than those recoverable for the TILA violation, this action must be set for trial on the remaining Mini-Code claim. Once that claim is resolved and evaluated by a jury, a judgment reflecting the total plaintiff is entitled to recover (without a double recovery) will be entered.

A separate order will be entered in accordance with the findings set forth herein.

DATED the 9th day of January, 2008.

```
                              _____
                              T. MICHAEL PUTNAM
                              U.S. MAGISTRATE JUDGE
```